UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DETRICK WILLIAMS,

               Petitioner,               Case No. 2:16-cv-244

v.                                 Honorable Gordon J. Quist

KATHLEEN OLSON,

               Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Detrick Williams is incarcerated with the Michigan Department of Corrections at the Saginaw County Correctional Facility (SRF) in Freeland, Michigan. Petitioner pleaded guilty in the Muskegon County Circuit Court to second-degree fleeing and eluding, Mich. Comp. Laws § 257.602a. On March 11, 2013, the court sentenced Petitioner to prison term of 7 to 15 years.

Petitioner also entered a plea of guilty to resisting and obstructing a police officer, Mich. Comp. Laws § 750.81d. The trial court sentenced Petitioner to one year in the county jail for that offense. That sentence was to be served concurrently with the sentence for second-degree fleeing and eluding. Both sentences, however, were to be served consecutively to sentences for which Petitioner was out on parole at the time he committed the more recent offenses. All of Petitioner's sentences, with the exception of the latest resisting and obstructing offense, are indeterminate.

The Michigan statute regarding parole eligibility affords the parole board maximum flexibility in deciding when to terminate the first sentence in a consecutive string of sentences.

> If a prisoner other than a prisoner subject to disciplinary time has 1 or more consecutive terms remaining to serve in addition to the term he or she is serving, the parole board may terminate the sentence the prisoner is presently serving at any time after the minimum term of the sentence has been served.

Mich. Comp. Laws § 791.234.   MDOC Policy Directive 03.01.135 regarding Discharge/ Termination of Sentence reinforces that flexibility:

> [I]f an offender is serving consecutive sentences, none of the sentences which are part of the consecutive string shall be terminated until all sentences in that string have been served.

MDOC Policy Directive 03.01.135 ¶ MM (Eff. 1/23/2014).  Because the system is designed to afford the parole board maximum flexibility to impose the shortest possible sentence—the combined minimums—or the longest possible sentence—the combined maximums—it is impossible to determine whether Petitioner has even begun to serve the sentences he is presently challenging.

On October 12, 2016, Petitioner timely filed his habeas corpus petition raising four grounds for relief, as follows:

I.    The Sentencing Guidelines were incorrectly scored regarding OV 9, OV 19, in violation of [Petitioner's] rights at sentencing under the federal and state constitutions, Michigan statutes and court rules and interpretive case law.

II.   The factual basis to establish resisting and obstructing was insufficient, in violation of [Petitioner's] due process rights which govern pleas.

III.  Judicial fact-finding at sentencing based on less than proof beyond a reasonable doubt violated [Petitioner's] Fifth and Sixth Amendment rights.

IV.   Counsel was ineffective for failing to make proper objections as to penalties imposed, violating [Petitioner's] rights under US Const, [AMS.] V, VI, XIV; Const 1963, Art 1, §§ 17, 20.

(Pet., ECF No. 1, PageID.13.)  Respondent has filed an answer to the petition (ECF No. 10) stating that the grounds should be denied because they are non-cognizable and/or meritless.  Upon review

and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are non-cognizable or meritless. Accordingly, I recommend that the petition be denied.

### Discussion

I.    Background

During the early morning hours of September 22, 2012, a police officer drove up behind Petitioner in his vehicle.  (Plea Hr'g Tr., ECF No. 11-2, PageID.112.)  The officer observed Petitioner turning right on a red light without coming to a full stop.  (Pet'r's Appl. for Leave to Appeal, ECF No. 11-4, PageID.144.)  The officer turned on his overhead lights to signal Petitioner to pull over.  (Plea Hr'g Tr., ECF No. 11-2, PageID.112.)  Petitioner stopped his car, but when the officer approached Petitioner's vehicle, Petitioner drove away.  (Pet'r's Appl. for Leave to Appeal, ECF No. 11-4, PageID.144.)  Petitioner eluded the police for a period of time, driving at a high rate of speed.  (Plea Hr'g Tr., ECF No. 11-2, PageID.113.)  Eventually he stopped the car and ran away on foot.  (*Id*.)  The police chased Petitioner and ultimately took him into custody.  (Pet'r's Appl. for Leave to Appeal, ECF No. 11-4, PageID.145.)

The prosecutor charged Petitioner with fleeing and eluding, two counts of resisting and obstructing, operating on a suspended license, and alcohol-open container.  (Muskegon Cty. Cir. Ct. Docket Sheet, ECF No. 11-1, PageID.91.)  They also provided notice that Petitioner would be penalized as a habitual offender-fourth offense, Mich. Comp. Laws § 769.12.  (*Id*.)

Prior to trial, Petitioner and his counsel negotiated a plea with the prosecutor.  In exchange for Petitioner's plea of guilty to one count of fleeing and eluding and one count of resisting and obstructing, and acknowledgement of Petitioner's prior convictions, the prosecutor would dismiss the other charges and a civil infraction ticket.  (Plea Hr'g Tr., ECF No. 11-2,

PageID.97.)  The parties and the trial court entered into a *Cobbs* agreement[1] that Petitioner's minimum sentence would not exceed 84 months.  (*Id.*, PageID.98, 105.)  The *Cobbs* agreement applied only to the fleeing and eluding offense, not the resisting and obstructing offense.  (*Id.*)

Petitioner, with knowledge of the possible penalties and the rights he was giving up, entered a plea of guilty.  (*Id.*, PageID.110.)  Petitioner admitted that he fled the police at a high rate of speed even though he knew the flashing lights were meant for him.  (*Id.*, PageID.112.)  He also admitted that he eventually stopped, left his car, and ran away from police on foot.  (*Id.*, PageID.113.)  Petitioner also acknowledged that he had been convicted of at least five prior felonies.  (*Id.*, PageID.105-107.)

Although there was a *Cobbs* agreement in place, the trial court reviewed the guidelines as scored by the MDOC agent.  (Sent. Tr., ECF No. 11-3, PageID.127.)  The court noted that the 84-month maximum minimum fell roughly in the middle of the calculated guidelines range of 38 to 152 months.  (*Id.*)  The court held Petitioner's minimum at 84 months (7 years) and imposed a discretionary maximum of 25 years.  The court imposed an intermediate sanction of 12 months in county jail on the resisting and obstructing charge.[2]

Petitioner, with the assistance of appointed counsel, sought leave to appeal his convictions and sentence, raising the same four issues he raises in his petition.  (Appl. for Leave to Appeal, ECF No. 11-4, PageID.141.)  Petitioner also sought a remand to the trial court so that

---

[1] In *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court approved the practice of judicial involvement in sentence bargaining.  *Id.* at 211.  In *Cobbs* the supreme court authorized state trial court judges to, at the request of a party, provide a preliminary evaluation of the sentence that the judge would impose.  *Id.* at 211-12.  The parties may then base a plea and sentencing agreement on that number.  *Id.*  If the court decides to exceed that number at sentencing, the court must permit the defendant to withdraw his or her plea.  *Id.*

[2] Michigan sentences are typically indeterminate with a minimum and maximum term.  Mich. Comp. Laws §§ 769.8-769.12.  In certain circumstances, however, the court may impose a definite "intermediate sanction" of not more than 12 months.  Mich. Comp. Laws § 769.34(4)(c).  Alternatively, the court could have given Petitioner an indeterminate sentence with a 15-year maximum.  (Sent. Tr., ECF No. 11-3, PageID.128.)

the trial court might resentence him based on accurate information.  (Mot. to Rem., ECF No. 11-4, PageID.211-212.)  By order issued January 14, 2014, the Michigan Court of Appeals denied leave "for lack of merit in the grounds presented."  (Mich. Ct. App. Order, ECF No. 11-4, PageID.131.)  The appellate court also denied the motion to remand.  (*Id.*)

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court, raising the same issues he raised in the court of appeals.  By order entered October 28, 2015, the Michigan Supreme Court denied leave to appeal because it was not persuaded that the questions should be reviewed.  (Mich. Order, ECF No. 11-5, PageID.244.)

Petitioner returned to the trial court.  He filed a motion for relief from judgment raising one issue: retroactive application of the judicial construction of Mich. Comp. Laws § 769.10 in *People v. Gardner*, 753 N.W. 2d 78 (Mich. 2008) violated the *ex post facto* clause and Petitioner's due process rights.  (Mot. for Relief from J., ECF No. 11-6, PageID.335.)  The trial court rejected Petitioner's claim as meritless, but also concluded that Petitioner was not entitled to relief because he had failed to establish cause and prejudice for his failure to raise the issue on his initial appeal.  (Muskegon Cty. Cir. Ct. Op. & Order, ECF No. 11-7.)  Petitioner has not sought leave to appeal that decision.  Instead, he filed his habeas petition in this Court.

II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*,

135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Mis-scored Sentencing Guidelines

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature);

*Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

To the extent Petitioner intends to suggest that his sentence was disproportionate under *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), he fails to raise a cognizable habeas claim. In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003).  It is plain that *Milbourn* was decided under state, not federal, principles.  *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994).  As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law.  *See Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41.  Thus, a claim based on *Milbourn* is not cognizable in a habeas corpus action.

Moreover, any claim that Petitioner's sentence was disproportionate under the Eighth Amendment is without merit.  The United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence

imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).   A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin*, 213 F.3d at 302 (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).   Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.  Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

Finally, Petitioner also fails to demonstrate a due process violation.  A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 444, 447.

9

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information.  Petitioner contends that the trial court should not rely on the fact that he ran from police when scoring Offense Variable 19.  (Appl. for Leave to Appeal, ECF No. 11-4, PagID.144-147.)  He does not deny, however, that he ran from police.  (*Id.*)  Petitioner contends that the trial court should not rely on the fact that the police were put in danger by virtue of the high-speed chase when scoring Offense Variable 9.  (*Id.*, PageID.147-152.)  He does not deny, however, that the police were put in danger by virtue of the high-speed chase.  (*Id.*)  Petitioner contends that the trial court should not rely on the dismissed offenses when scoring Offense Variable 12.  (*Id.*, PageID.152-154.)  He does not deny, however, that the offenses occurred.  (*Id.*)  Finally, Petitioner contends that the trial court should not rely on the resisting and obstructing or other offenses to score Offense Variable 13.  (*Id.*, PageID.155-156.)  He does not deny, however, the facts underlying those offenses.  (*Id.*)

In each instance, Petitioner questions the trial court's interpretation of the guidelines, not the facts on which the court might have relied.  He therefore fails to demonstrate that his sentence violated due process.  *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).

Alternatively, Petitioner cannot succeed in his challenge because he cannot demonstrate that the court relied on anything other than Petitioner's agreement when the court-imposed sentence.  The court stated that it was "sticking with" the *Cobbs* commitment, even though Petitioner had "the right to persuade [the judge] to go down."  (Sent. Tr., ECF No. 11-3, PageID.127.)

10

The sentence agreement "'obviates the scoring of the sentencing guidelines[.]'" *People v. Dunbar*, No. 333510, 2017 WL 5759754, at *4 (Mich. Ct. App. Nov. 28, 2017) ("[D]efendant was sentenced pursuant to a plea agreement, rather than the sentencing guidelines . . . ."); *see also United States v. Cieslowski*, 410 F3d 353, 364 (7th Cir. 2005) (concluding that the sentence imposed under a plea agreement "arises directly from the agreement itself" and not from the sentencing guidelines) *cited in People v. Velez*, No. 315209, 2015 WL 5945364, at *4 (Mich. Ct. App. Oct. 13, 2015) (P.J. Boonstra concurring) and *People v. Banks*, No. 326795, 2016 WL 3946207, at *2 (Mich. Ct. App. July 21, 2016) and *People v. Faher*, No. 328285, 2016 WL 6127902. at *4 (Mich. Ct. App. Oct. 18, 2016).[3]

Petitioner has failed to demonstrate that the Michigan Court of Appeals' rejection of his sentence scoring argument on the merits is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief.

IV.    Factually Deficient Plea

Petitioner claims that the trial court failed to establish a factual basis for his plea to resisting and obstructing.  He acknowledges that he admitted running away from the police. (Pet'r's Appl. for Leave to Appeal., ECF No. 11-4, PageID.157-158; Plea Tr., ECF No. 11-2, PageID.113.)  Nonetheless, he claims that just running away is insufficient to demonstrate resisting and obstructing.  To establish that he resisted or obstructed, he contends, the court was required to

---

[3] Michigan courts have relied on the waiver that follows from accepting a specific sentence in other contexts as well. *See, e.g., People v. Wiley*, 693 N.W.2d 800 (Mich. 2005) (where defendant agreed to a minimum sentence of 38 years, but the guidelines range was 15 to 25 years, the court held "a defendant waives appellate review of a sentence that exceeds the guidelines by understandingly and voluntarily entering into a plea agreement to accept that specific sentence."); *Cobbs*, 505 N.W.2d at 213.  ("[W]e caution that a defendant who pleads guilty or nolo contendere with knowledge of the sentence, and who later seeks appellate sentence relief under *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), must expect to be denied relief on the ground that the plea demonstrates the defendant's agreement that the sentence is proportionate to the offense and offender.").

find that he assaulted, battered, wounded, resisted, obstructed, opposed, or endangered someone. Mich. Comp. Laws § 750.81d.

The requirement that the court establish a factual basis for a guilty plea is a creature of rule, not the federal Constitution. While states are free to adopt procedural rules requiring a factual basis, as Michigan has done in Mich. Ct. R. 6.610(E)(1)(a), the federal constitution does not mandate them to do so. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *accord Meyers v. Gillis*, 93 F.3d 1147, 1152 (3d Cir. 1996); *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc) (implicitly overruled on other grounds by *Custis v. United States*, 511 U.S. 485 (1994)).

Moreover, Petitioner presents no other basis to question the constitutional validity of his plea.  It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).   Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985);  *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267.   A plea not voluntarily and intelligently made has been obtained in violation of due process and is void.   *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner's claim does not challenge the power of the state to bring him into court.   Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into.  *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Higgason v. Clark,* 984 F.2d 203, 208 (7th Cir. 1993) (quoting *Alford*, 400 U.S. at 31) ("Strong evidence of guilt may suffice to sustain a conviction on an *Alford* plea, and may be essential under Fed. R. Crim. P. 11, but it is not necessary to comply with the Constitution."); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971). Thus, Petitioner's guilty plea to resisting and obstructing would not be rendered invalid simply because the court did not ensure there was a factual basis for a conviction.

Furthermore, Petitioner does not claim that his plea was not knowing and voluntary. In order to find constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh

13

rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Petitioner's responses to the court's inquiries at the plea hearing reveal that Petitioner was competent, he was not coerced into entering a plea, and he understood the consequences of his plea.

Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57. Petitioner challenges the effectiveness of his counsel; however, that challenge is limited to sentencing and does not call into question the validity of his plea.

Petitioner's claim of a factual defect in his resisting-and-obstructing plea does not call into question the validity of his plea. Petitioner has failed to show that his plea was unknowing or involuntary in some other way. Accordingly, he has failed to establish that the court of appeals'

rejection of his argument is contrary to, or an unreasonable application of, clearly established federal law.  He is not entitled to habeas relief on this claim.

## V.    Sentence is Based on Judge-Found Facts

Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt.  Petitioner's argument is based on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.  Justice Souter has since described the holding in *Apprendi* as follows:

> We held that exposing a defendant to an increased penalty beyond the range for a basic crime, based on facts determined exclusively by a judge, violated the Sixth Amendment, *in the absence of a jury waiver*; a defendant could not be subjected to a penalty more serious than one authorized by the facts found by the jury or admitted by the defendant.

*Rita v. United States*, 551 U.S. 338, 387 (2007) (Souter, J. dissenting) (emphasis added).[4]

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held that the state guideline scheme violated the Sixth and

---

[4] It is noteworthy that Apprendi, like Petitioner, entered a plea.  Apprendi, however, expressly reserved the right to challenge the sentence enhancing factor.  The Michigan Court Rules also permit the entry of a conditional plea that has the effect of preserving an issue or issues for appeal despite the plea.  Mich. Ct. R. 6.301(C)(2).  In Petitioner's case, however, his plea was not conditional.

Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).  The *Blakely* Court recognized, however, that "nothing prevents a defendant from waiving his *Apprendi* rights."  *Blakely*, 542 U.S. at 310.   In responding to Justice Breyer's dissent, the majority explained "that the Sixth Amendment was not written for the benefit of those who choose to forgo its protection."  *Id*. at 312.

In *Booker*, 543 U.S. at 220, the Supreme Court determined its conclusion with regard to the state sentencing guideline scheme in *Blakely* would also apply to the federal sentencing guidelines.  One group of five justices concluded that the federal sentencing guidelines conflicted with the Sixth Amendment.  Another group of five justices determined the appropriate remedy was to make the guidelines discretionary.  Leaders of both groups recognized the ability of a defendant to waive his Sixth Amendment right.  "[I]t is axiomatic that a defendant may waive his Sixth Amendment right to trial by jury." *Booker*, 543 U.S. at 276-77 (Stevens, J. dissenting in part as to remedy).  Justice Breyer, for the remedial majority, also acknowledged that bargained pleas do not implicate the Sixth Amendment.  *Booker*, 543 U.S. at  248.

Subsequently, in *Alleyne*, 570 U.S. at 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences.  Shortly thereafter, the Michigan Court of Appeals concluded that *Alleyne* did not prohibit judicial fact-finding in scoring the Michigan sentencing guidelines that generated the minimum range under Michigan's indeterminate sentencing regimen.  *See People v. Herron,* 845 N.W.2d 533, 539 (Mich. App. 2013).[5]  The Sixth Circuit also suggested that *Alleyne* did not decide the question whether judicial fact-finding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment.

---

[5] Under Michigan's system, the guideline determination affects only the minimum term.  The maximum term is always the maximum punishment permitted by statute.

*See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013).  As a consequence, the Sixth Circuit held, the question is not a matter of clearly established Supreme Court precedent.  *Id.* (citing *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .") (quoting *Alleyne*, 570 U.S. at 113 (emphasis added)).  The Sixth Circuit has since clarified that "Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018).

The Michigan Supreme Court reached that same conclusion in a 5-2 decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).  The court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*. *Lockridge*, 870 N.W.2d at 506 (emphasis in original).  Consequently, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional.  The Court's remedy, consistent with *Booker*, was to make the guidelines advisory only.  *Id.* at 520-21.

The Michigan Supreme Court made its holding in *Lockridge* applicable to cases still "pending on direct review." *Id.* at 523.  Petitioner's case was still pending on direct review at the time the *Lockridge* court reached its decision.  Accordingly, *Lockridge* applies.  The fact that *Lockridge* applies to Petitioner's case, however, does not mean that Petitioner is entitled to relief.

The *Lockridge* court identified a limited group of defendants that might demonstrate the potential for plain error sufficient to warrant a remand to the trial court:

17

"defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure . . . ." *Id.* at 522 (footnote omitted). If a remand is appropriate, the trial court, on remand, must determine if it "would have imposed a materially different sentence but for the unconstitutional restraint . . . ." *Id.* at 524.

Here, Petitioner cannot demonstrate that his minimum sentence was constrained by a violation of the Sixth Amendment, for two reasons. First, Petitioner waived his Sixth Amendment rights. *Blakely*, 542 U.S. at 310 ("[N]othing prevents a defendant from waiving his *Apprendi* rights."); *United States v. Ramirez*, 528 F. App'x 678, 679 (7th Cir. 2013) ("Counsel recognizes, however, that by pleading guilty Ramirez waived his right to have a jury, rather than the district judge, determine the drug quantity."); *United States v. Lefebvre*, 189 F. App'x 767, 774 (10th Cir. 2006) ("In this case, Mr. LeFebvre waived his right to a jury trial without qualification, thereby precluding him from challenging his sentence on grounds the district court committed constitutional *Booker* error by not affording him a jury determination on facts relevant to sentencing."). The advice of rights form indicates that, by entering a plea, Petitioner would give up his right to be tried by a jury. (Muskegon Cty. Cir. Ct. Docket Sheet, ECF No. 11-1, PageID.92.)[6]

Second, as explained above, the trial court derived Petitioner's minimum sentence from the parties' *Cobbs* agreement. The sentence agreement "'obviates the scoring of the sentencing guidelines[.]'" *Dunbar*, 2017 WL 5759754, at *4 ("*Lockridge* does not apply to defendant's sentences because defendant was sentenced pursuant to a plea agreement, rather than

---

[6] The Advice of Rights form referenced on the docket sheet is Michigan Court Form CC 291, available at https://courts.michigan.gov/Administration/SCAO/Forms/courtforms/cc291.pdf (last visited Feb. 21, 2019). The form indicates that if the plea is accepted, the pleader is giving up the right to be tried by a jury.

the sentencing guidelines . . . ."); *see also Cieslowski*, 410 F.3d at 364 (concluding that a *Booker* challenge was not available because the sentence imposed under a plea agreement "arises directly from the agreement itself" and not from the sentencing guidelines) *cited in Velez*, 2015 WL 5945364, at *4 ("[B]ecause defendant agreed to a sentence within the guidelines range, the sentence imposed by the trial court 'arose directly from the plea agreement and was not based on any facts found only by the trial court.'"); *Banks*, 2016 WL 3946207, at *2; *Faher*, 2016 WL 6127902, at *4 ("[W]hen a sentencing court imposes a sentence pursuant to the terms of a plea agreement bargained for and accepted by the defendant, the sentence is not affected by the court's perception of the mandatory or advisory nature of the sentencing guidelines; thus, the constitutional concerns underpinning *Lockridge* and *Alleyne* are not implicated."). Therefore, even if Petitioner had not waived his right to a jury trial, he waived his objection to the court's scoring of the guidelines by agreeing to a specific sentence of 7 years.

Petitioner has failed to show that the state appellate courts' rejections of his *Alleyne* claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on that claim.

## VI.    Ineffective Assistance of Counsel

Finally, Petitioner contends that his counsel rendered ineffective assistance when she failed to challenge the validity of Petitioner's resisting and obstructing plea or the scoring of the guidelines. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.

A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Counsel's failure to raise a meritless issue does not constitute ineffective assistance. *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'"). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). For the reasons set forth above, from a federal constitutional perspective, the claims Petitioner contends his counsel should have raised are plainly meritless.

Moreover, from a state law perspective—particularly with respect to the guidelines scoring issues—the Michigan Court of Appeals' conclusion that Petitioner's claims lacked merit is fatal to his ineffective assistance claim. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68 (observing that the Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law") (internal quotations and citations omitted). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464

U.S. 78, 84 (1983).  The Sixth Circuit counsels "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).  Because the state court determined that Petitioner's challenges lacked merit as a matter of state law, his counsel cannot be faulted for failing to raise them.

Petitioner has failed to show that the state appellate courts' rejection of his ineffective assistance of counsel claims is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Date:  April 3, 2019                    /s/ *Maarten Vermaat*
                                                 MAARTEN VERMAAT
                                                 U.S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).